## AFFIDAVIT

I Laurence A. Travaglia, being duly sworn, do hereby depose and say that:

1.  I am a Special Agent with the Federal Bureau of Investigation and have been so employed for the past thirteen years.  I am currently assigned to the Boston Division, Lowell Massachusetts Resident Agency ("RA").  As part of my duties as a Special Agent assigned to the Lowell RA, I am primarily responsible for the investigation of white collar crime, violent crime and public corruption matters.  Prior to my assignment to the Lowell RA, I was assigned, for approximately eight years, to the FBI Bank Robbery Task Force, a unit comprised of personnel from the FBI, the Massachusetts State Police, and the Boston and Cambridge Police Departments. Prior to that, I was assigned to the investigation of white collar crime and bank fraud matters for approximately four years.  As part my duties in these assignments, I have been the affiant for numerous complaint and search warrant affidavits and have made numerous arrests and executed numerous search warrants.

2. I am aware that Title 18, of United States Code Section 2113(b), makes it a crime to knowingly take and carry away, with intent to steal or purloin, any property or money or any other thing of value exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of

any bank, credit union, or any savings and loan association. Having so said, I make this affidavit in support of a Criminal Complaint charging Byron Viteri ("Viteri") with Bank Larceny, for having participated in the theft of $54,680 from Fleet Bank, a financial institution the deposits of which were federally insured at the time of the theft.

3.   The facts stated herein are based upon my own involvement in this investigation. In submitting this affidavit however, I have not included each and every fact known to me concerning the investigation. Instead, I have included only those facts I believe to be sufficient to establish the requisite probable cause.

4.   On July 25, 2003, Michael J. Buckley, Regional Security Manager, Brinks Incorporated ("Brinks") reported that on July 7, 2003, $54,680 in U.S. currency belonging to Fleet Bank was stolen from a Brinks armored car. Buckley stated that the currency had come into possession of Brinks when a Brinks employee assigned to a route designated "Run 9" removed it from a Fleet Bank Automated Teller Machine ("ATM") in North Andover, Massachusetts as part of servicing that ATM. The Brinks employees assigned to Run 9 were Alberto Tapia and Gary Barnaby. Tapia was the armored car driver, whose job requires him to stay behind the wheel of the armored car at all times,

2

and Barnaby was the messenger, whose job it was to service ATMs along Run 9. Servicing the ATM entails removing the cash contained in the ATM, which Brinks records indicate totaled $54,680, and replenishing ATM with a new supply of cash. Barnaby placed the $54,680 he removed from Fleet's North Andover ATM into a cash bag and placed that bag in the storage area of the armored car. Fleet records indicate that the ATM was serviced between 7:51 and 8:27 a.m.

5. At the end of day on July 7, 2003, Brinks discovered that one of the bags of cash corresponding to Run 9 was missing. An audit of cash receipts for that day revealed that $54,680 was missing from Run 9's total. Of the several stops made by Tapia and Barnaby on that date, only the North Andover ATM yielded $54,680. Thus, the cash bag corresponding to the North Andover Fleet ATM is the bag that was stolen.

6. Brinks security personnel, along with Lawrence, Massachusetts police detectives, interviewed both Tapia and Barnaby with regard to the missing bag of cash. Neither individual was able to account for the disappearance and both denied any involvement in the disappearance. Barnaby, however, indicated that he overheard Tapia using his cellular telephone during the run. Barnaby stated that, in each conversation, Tapia spoke in Spanish, which Barnaby does not

3

understand.

7. According to records maintained by Brinks, Tapia resided at 112 Alston Street, Lawrence, Massachusetts; his personal NEXTEL cellular telephone number was 978-361-5599; and he was married to Diomaris Tapia.

8. A review of records obtained from NEXTEL disclosed that the subscriber of cellular telephone number 978-361-5599, (hereinafter "the target telephone"), is Diomaris Tapia, 112 Alston Street, second floor, Lawrence, Massachusetts. Those records also show that beginning at approximately 8:04 AM on July 7, 2003 a series of calls were placed to the target phone from telephone number 978-902-5070 (hereinafter "the originating telephone"). Investigation later determined that the originating telephone is a T-MOBILE cellular telephone belonging to Jose Medina, 1 Sargent Street, Lawrence, Massachusetts. Records provided by T-MOBILE corroborate that, beginning at approximately 8:05 AM on July 7, 2003 a series of calls were placed from the originating telephone to the target telephone.

9. On November 26, 2003, Robert True, a Brinks Branch Manager in Lawrence, met with an individual identified only as "Junior". Junior told True that the driver of the armored car, along with a former Brinks employee whom Junior

4

identified only as Byron, were responsible for the July 7,
2003 theft.  Junior explained that cellular telephone calls
were exchanged between Byron and the driver before the theft.
Junior further advised that a third man had driven Byron to
the location of the theft in a 1993, four door Saturn, gold in
color.  Junior explained that, to accomplish the theft, Byron,
wearing his old Brinks uniform, which included a pistol belt
with a handgun, entered the armored car through the side door
using a key that he had purchased from an insider at Brinks.
Byron did this when the messenger (Barnaby) was outside of the
armored car servicing the ATM.

    10.  Michael Buckley has confirmed that Viteri was
previously employed by  Brinks and that Brinks suspended
Viteri on June 9, 2003, four weeks before the theft.  Viteri
turned in his Brinks uniform only after the theft.  According
to Brinks records, Viteri resides at 114 Everett Street,
Lawrence, Massachusetts and his telephone number is 978-682-
0911.

    11.  On December 11, 2003, Buckley and I conducted a
second interview of Junior.  During that interview, Junior
advised that he knew the man who drove the gold Saturn on the
day of the theft only as "Leo."  Junior further stated that
Leo resides at 1 Sargent Street, Lawrence, Massachusetts and

5

has a cellular telephone number of 978-902-5070. According to

Junior, the July 7, 2003 theft took place at an ATM located in

Plaistow, New Hampshire.

12. According to Buckley, on the day of the theft, Run 9

serviced two ATM locations on Plaistow Road near the

Massachusetts-New Hampshire border. The first ATM was located

at 5 Plaistow Road, Haverhill, Massachusetts. Buckley

described this ATM as being in a kiosk. The second ATM

serviced was located at 31 Plaistow Road, Plaistow, New

Hampshire. Buckley described this ATM as a "drive up" design.

13. A review of records maintained by the Massachusetts

Registry of Motor Vehicles disclosed that a Massachusetts

drivers license was issued to Leonardo Lara, who resides at 1

Sargent Street, Lawrence, Massachusetts, the address provided

by Junior as Leo's address.

14. A review of records maintained by the New Hampshire

Registry of Motor Vehicles disclosed that Leonardo Lara

registered a 1993 Gold Saturn, among other vehicles, to 156

Shore Drive in Salem New Hampshire.

15. According to Brinks records, Leonardo Lara submitted

an employment application to Brinks on 4/16/2003. In his

application, Lara indicated that he was referred to Brinks for

employment by Viteri.

6

16.   A review of the surveillance video at the ATM located at 5 Plaistow Road in Haverhill, Massachusetts shows that on July 7, 2003, at approximately 9:09 a.m., a light colored, four-door car entered the ATM parking lot.  Although no logo is visible in the photograph, based on the body design, I believe it is a Saturn that is depicted.  The surveillance video further depicts a Brinks armored car parked in front of the ATM kiosk.

17.   Telephone records indicate that calls were placed from the originating phone to the target phone at approximately 9:08 a.m. and 9:10 a.m.  Additionally, at approximately 9:16 a.m., a telephone call was placed from the originating phone to Viteri's telephone number, 978-682-0911.

18.   On April 1, 2004, this affiant, along with other law enforcement agents contacted Lara at 1 Sargent Street in Lawrence.  Informing him that he was not under arrest, I asked Lara if he would be willing to speak to me at the FBI office in Methuen, Massachusetts.  I also told Lara that, if he chose to accompany me, he would be free to leave at any time.  Lara consented to be interviewed and was driven to the FBI office in Methuen.  Lara was not handcuffed at any time.  Upon arriving at the office, Lara was again informed that he was not under arrest and free to leave at any time.  Lara's

7

freedom of movement was not limited in any fashion during the interview.  Lara was presented with a summary of the evidence collected with regard to the July 7, 2003 Brinks theft.  Lara was asked if he wished to make a voluntarily statement concerning the theft.  Lara stated that he wished to cooperate with investigators.  No promises, either implied or express, were made to Lara in exchange for his cooperation.

19.  In his statement, Lara provided the following information.  He admitted to participating in an armored car "robbery" with Viteri during the previous summer.  Lara explained that the evening prior to the theft, Viteri telephonically contacted Lara asking for a ride the following morning.  The next morning, Viteri arrived at Lara's home at approximately 6:00 a.m.  It was at this time that Lara learned that Viteri planned to commit a "robbery" later that day.  Viteri told Lara that Lara only had to drive.  Lara agreed.

20.  Lara stated that he and Viteri drove to Plaistow, New Hampshire in his car, a 1993 Gold Saturn and parked in a Wal-Mart parking lot.  (I am familiar with that parking lot; it is approximately three miles from 5 Plaistow Road, in Haverhill, Massachusetts, where the theft took place.)  It was there that Viteri, using Lara's cellular telephone, contacted the driver of the armored car several times.  According to

8

Lara's understanding, the driver was involved in the theft.
Lara advised that the armored car messenger knew nothing about
the theft.  The purpose of the telephone calls to the driver
was to determine where to commit the theft.  After deciding
where to commit the theft, Lara drove Viteri to where the
armored car was parked and pulled in along side of it.
Viteri, wearing his Brinks uniform and carrying a pistol, got
out of the car and  entered the armored car through the side
door using a key which he had acquired from someone on the
inside at Brinks. (Viteri had explained to Lara that, to open
the armored car's side door, the driver had to hit a button
after the key was placed into the outside lock.)  Viteri
returned to the vehicle a short time later with two plastic
bags of cash.  Lara did not know how much money Viteri took.
Lara advised that Viteri gave him $2,000 for his role in the
theft.

    21.  Based upon the foregoing, I believe that there is
probable cause to believe that on or about July 7, 2003, Byron
Viteri did knowingly take and carry away, with intent to steal
or purloin, money exceeding $1,000 belonging to, or in the
care, custody, control, management, or possession of Fleet

Bank, in violation of Title 18, of United States Code Section
2113(b) and Section 2.

Laurence A. Travaglia
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 15th day of June, 2004.

CHARLES B. SWARTWOOD, III
United States Magistrate Judge

JS 45  (5/97) - (Revised USAO MA 3/25/02)  Page 2 of 2 or Reverse

**District Court Case Number**  (To be filled in by deputy clerk): _____

**Name of Defendant**    Leonardo Lara _____

### U.S.C. Citations

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | Bank Larceny | 18 U.S.C. 2113(b) and 2 | 1 |
| Set 2 | | | |
| Set 3 | | | |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |
| Set | | | |

**ADDITIONAL INFORMATION:** _____

JS45.wpd - 1/15/04 (USAO-MA)

%JS 45  (5/97) - (Revised USAO MA 1/15/04)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

Place of Offense: _____    Category No. __II__    Investigating Agency __FBI_____

City  __Haverhill_____         Related Case Information:

County  __Essex_____        Superseding Ind./ Inf. _____  Case No. _____
                                     Same Defendant _____  New _____
                                     Magistrate Judge Case Number  _____
                                     Search Warrant Case Number  _____
                                     R 20/R 40 from District of  _____

**Defendant Information:**

Defendant Name  __Byron Viteri_____    Juvenile  ☐ Yes  ☒ No

Alias Name  _____

Address  __3 Memorial Drive, Middleton, MA_____

Birth date (Year only): __1972__ SSN (last 4 #): __4235__ Sex __M__ Race: __Hispanic___ Nationality: _____

**Defense Counsel if known:** _____    Address: _____

**Bar Number:** _____

**U.S. Attorney Information:**

AUSA  __John A. Capin_____    Bar Number if applicable _____

Interpreter:  ☐ Yes  ☒ No        List language and/or dialect: _____

Matter to be SEALED:  ☒ Yes  ☒ No (JAC)

        ☒ Warrant Requested        ☐ Regular Process        ☐ In Custody

**Location Status:**

**Arrest Date:** _____

☐ Already in Federal Custody as _____ in _____ .
☐ Already in State Custody _____  ☐ Serving Sentence  ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by _____ on _____

**Charging Document:**    ☒ Complaint    ☐ Information    ☐ Indictment

**Total # of Counts:**    ☐ Petty _____  ☐ Misdemeanor _____  ☒ Felony __1__

**Continue on Page 2 for Entry of U.S.C. Citations**

☐    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date:  __6/15/04__        Signature of AUSA: _____