UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10239-MLW |
| | ) | |
| BYRON VITERI | ) | |
| | ) | |

<u>DEFENDANT'S SENTENCING MEMORANDUM</u>

Now comes the defendant and respectfully requests that this Court accept the joint recommendation of the defendant and the government that the defendant be sentenced to two years' probation. Probation is an appropriate disposition in this case for the reasons set out below.

<u>Personal Information</u>

Mr. Viteri is an American citizen, thirty-two years old, with no prior convictions. As set out in Probation Officer Lisa Dube´'s Presentence Report concerning the defendant's background, Mr. Viteri's parents are from Ecuador, and he was raised in Ecuador and New York City. His family is hard-working and close-knit: his father is a farmer in Ecuador, one brother works for the sanitation department in Lawrence, and his other brother is in the U.S. Marines. Mr. Viteri dropped out of high school in the eleventh grade but later obtained his G.E.D.

Mr. Viteri has a strong work ethic. From the time he left school, Mr. Viteri has always worked: as a jeweler; a carpenter; a painter; a provider of restaurants' sanitation needs; a cab driver; and a security guard. He takes pride in his ability to provide for his family and make ends meet on an extremely tight budget. He lives in an apartment in Lawrence with his girlfriend and their two children, a son who is nineteen months old and a daughter who is nine

years old.  His girlfriend works part-time in a residence for mentally disabled persons and is also attending nursing school.  Mr. Viteri also supports his son from his previous marriage, who is eight years old and lives in New York.

Mr. Viteri is a good parent and is loving and supportive of his children.  He has worked hard to maintain a relationship with his son in New York and sees his son regularly on weekends and for longer periods of time in the summer.  In expressing remorse for his conduct in the present case, he has told counsel that his biggest fear is that he will go to prison and miss seeing and supporting his children, and that he cannot imagine why he risked the welfare of his children by committing this crime.  Although Mr. Viteri had an acrimonious break-up with his wife, his relationship with his girlfriend is stable and loving.  He strongly supports her efforts to finish nursing school, supporting her financially and looking after the children while she attends classes.  He states that although she can only work part-time while going to school, the financial sacrifice is worth it because she will be able to have a better career in the future.

As can be seen from Ms. Dube´'s report concerning Mr. Viteri's financial situation, Mr. Viteri and his girlfriend are both working but are barely making ends meet.  Were Mr. Viteri to go to prison, his girlfriend and their children would not be able to afford their apartment, and he would not be able to financially support his son in New York.  His girlfriend would have to suspend her training to become a nurse.  It is in the best interests of society, and Mr. Viteri's dependents, that he be permitted to remain in the community and continue working and supporting his family.

The Offense

Mr. Viteri takes full responsibility for his crime and does not wish to minimize his role

in the offense.  Nevertheless, the facts are undisputed that Mr. Viteri did not plan the offense but

was following the instructions of his co-venturer, Alberto Tapia.

At the time of the offense, July, 2003, Mr. Viteri had lost his job with Brinks and was

looking for work.  He had taken a temporary job as a cab driver in Lawrence and was not

successful at making money at that job.  He and his girlfriend had a new baby, his son, and he

felt a great deal of pressure to support his family.  Mr. Viteri reports that Alberto Tapia, whom

he knew from his former job at Brinks, visited him at home one day.  The defendant had looked

up to Mr. Tapia, who is in his mid-fifties and seemed seasoned and well-traveled.  Mr. Tapia

told Mr. Viteri that he knew he was struggling, and Mr. Tapia wanted to help him out.  Mr.

Tapia, who was still working for Brinks, suggested to Mr. Viteri that he would give him $3,000

for picking up some money that Mr. Tapia would give him from a Brinks truck.  Mr. Viteri

agreed.

When Mr. Viteri was arrested by the FBI, he immediately began to cooperate, eventually

testifying at the grand jury and agreeing to testify at trial.   As Assistant United States Attorney

John Capin states in his Motion for Sentence Below Applicable Guideline Sentencing Range

under U.S.S.G. § 5K1.1, Mr. Viteri corroborated everything his co-defendant, Leonardo Lara,

told the government concerning the crime.   Further, as the government states, the government's

ability to charge Mr. Tapia was significantly enhanced by Mr. Viteri's cooperation.

Probation's suggestion that Mr. Viteri should receive additional offense level points for

carrying a gun during the offense is unwarranted.  Assistant United States Attorney John Capin

has stated in his objections to the Presentence Report, he does not believe the evidence supports a finding that the offense involved a firearm and the government does not advocate such an increase. (Report p. 19) The only source for the "fact" that Mr. Viteri had a gun during the offense is Mr. Lara, who is said initially to have told the police that Mr. Viteri had a gun, but later stated that he was not sure of that fact. As the government points out, Mr. Viteri has always emphatically denied having a gun during the offense. Counsel notes that it would not make sense for Mr. Viteri to have had a weapon, since Mr. Tapia was expecting Mr. Viteri. It does not follow, as Probation argues in the Presentence Report, p. 20, that since the other Brinks employee in the truck was unaware of the planned theft, Mr. Viteri would have felt the need to carry a gun to threaten this individual if he discovered the robbery in progress. Being willing to take a bag of money from one employee does not mean that one stands ready to assault and rob a second employee.

The defendant's cooperation against Mr. Tapia has not been without risk for him. Alberto Tapia has family in the Lawrence area, including a brother who lives near Mr. Viteri and knows him well. After Mr. Tapia's arrest, he was released, and Mr. Viteri ran across him in Lawrence on several occasions. Mr. Tapia was driving a cab for some time after his release, and on more than one occasion Mr. Viteri felt that Mr. Tapia, who recognized Mr. Viteri's car, was following him. Mr. Tapia and his family are well-aware of Mr. Viteri's assistance to the government and Mr. Viteri feels vulnerable and insecure in his hometown.[1]

---

1. Mr. Tapia is presently on default and his whereabouts are unknown.

For the above reasons, a sentence of two years' probation is appropriate in this case.


BYRON VITERI
By his attorney,

/s/ Page Kelley

Page Kelley
  B.B.O. #548237
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel: 617-223-8061


Date: January 21, 2005